PRESENT:  All the Justices

CITY OF HOPEWELL, VIRGINIA

                                                       OPINION BY

v.  Record No. 251193                       JUSTICE TERESA M. CHAFIN
                                               JULY 16, 2026

SHREE ARIHANT MOTEL, INC.

FROM THE CIRCUIT COURT OF THE CITY OF HOPEWELL

In this interlocutory appeal, the City of Hopewell (the "City") contends that it is immune from certain claims arising from the controlled burn of a vacant shopping center.  We agree with the City.  For the following reasons, we reverse the judgment denying the City's plea in bar and remand this case for further proceedings.

## I.  BACKGROUND

Shree Arihant Motel, Inc. ("Shree Arihant") owns real property in the City near the intersection of Interstate 295 and State Route 36.  Colonial Corner, a shopping center built in the 1970s, was located on the property.  Following two unsuccessful attempts to redevelop the property in 2008 and 2014, Colonial Corner became vacant.

In a letter dated February 25, 2019, a City building official informed Shree Arihant that Colonial Corner was blighted.  The official explained that the "dilapidated" and "deteriorated" buildings on the property "endanger[ed] the public's health, safety or welfare."  Additionally, the official noted that the buildings had been declared "unsafe" and "unfit for human occupancy" pursuant to the pertinent section of the Virginia Residential Code.  The official advised Shree Arihant that it had 30 days to submit a written abatement plan detailing the manner in which Shree Arihant would address the blighted condition of the property.

Shree Arihant did not submit a written abatement plan to the City.  In a letter dated June 27, 2019, a building official informed Shree Arihant that he and other members of the City's

staff had recommended the demolition of Colonial Corner. The official invited Shree Arihant to address the blighted property before the City Council at a public meeting on July 9, 2019.

Bharat Shah, a representative of Shree Arihant, spoke to the City Council at the public meeting. Shah explained that he was trying to find new tenants for Colonial Corner, and that he had spoken to restaurant chains that were interested in renting space in the shopping center. After considering Shah's comments, the City Council ordered Shree Arihant to "board up" Colonial Corner and "work with the City to develop a plan concerning the property." The City Council planned to revisit the issue at its next meeting on August 20, 2019.

Following the public hearing, a building official proposed to demolish Colonial Corner by a controlled burn conducted by the City's fire department. Although neither Shree Arihant nor Shah agreed to allow the City to burn Colonial Corner, Shah told the building official that he would consider the proposal and asked the City to provide an estimate of the anticipated costs of the project.

On August 20, 2019, the City Council voted to move forward with planning the demolition of Colonial Corner. The City Council advised building officials to begin planning the controlled burn and pursue a written contract with Shree Arihant concerning the demolition of the property. The City Council's clerk, however, erroneously recorded that the City Council voted to burn the shopping center. The City Council never adopted a specific ordinance addressing Colonial Corner.

In May 2020, the City grew concerned about trespassing on the Colonial Corner property. To deter trespassing and secure the property, the City ordered Shree Arihant to construct a fence around the shopping center. Shree Arihant complied with this directive and paid for a fence to be installed around Colonial Corner.

2

On January 12, 2021, the City Council again discussed the controlled burn of Colonial Corner. When discussing bidding for the removal of asbestos and debris from the property, the City Council noted that Colonial Corner did not present an emergency that required immediate action.

Approximately two weeks later, a building official informed the City Council that squatters and trespassers continued to access Colonial Corner. The official emphasized that the trespassers included children. The official asserted that Colonial Corner was "unsafe," and that the building posed an "immediate danger" to the public. Therefore, the official requested to proceed with the demolition of the shopping center.

In a letter dated February 12, 2021, a building official advised Shree Arihant that the City would burn Colonial Corner "on or soon after February 26, 2021." The official clarified that the City was acting pursuant to its authority to abate "spot blight." With the assistance of fire departments from neighboring jurisdictions, the City's fire department burned Colonial Corner as scheduled on the evening of February 26, 2021. The resulting debris was later removed from the property.

On February 21, 2024, Shree Arihant filed a civil complaint against the City in the Circuit Court of the City of Hopewell. The complaint asserted that the City took Shree Arihant's property without providing just compensation, in violation of the pertinent provisions of the United States and Virginia Constitutions. The complaint also requested a declaratory judgment regarding Shree Arihant's liability for certain costs and administrative penalties imposed by the City.

The City removed the case to the United States District Court for the Eastern District of Virginia. *See* 28 U.S.C. § 1441(a). Shree Arihant then filed an amended complaint, dropping its

takings claim based on the provisions of the United States Constitution. The case was subsequently remanded to the circuit court. *See* 28 U.S.C. § 1447.

With leave from the circuit court, Shree Arihant filed a second amended complaint asserting numerous claims against the City and the contractors who removed asbestos and debris from the Colonial Corner property. The second amended complaint alleged that the City committed intentional trespass, statutory business conspiracy (pursuant to Code §§ 18.2-499 and 18.2-500), tortious interference with a business expectancy, and waste (pursuant to Code §§ 8.01-178.1 and 8.01-178.2). The second amended complaint also asserted a takings claim against the City based on Article I, Section 11 of the Virginia Constitution, and requested a declaratory judgment regarding Shree Arihant's liability for certain costs and penalties imposed by the City.

The City filed a plea in bar based on sovereign immunity, arguing that it was engaged in a governmental function when it burned Colonial Corner. The City maintained that it demolished the shopping center to abate blight and "promote the health, safety, and general welfare of the citizens of Hopewell." While the City acknowledged that it was not immune from Shree Arihant's takings claim, the City contended that it was immune from the other claims asserted by Shree Arihant.

In response, Shree Arihant argued that the City was not entitled to sovereign immunity for two reasons. First, Shree Arihant claimed that the City's actions were ultra vires—emphasizing that the City failed to comply with statutory and municipal provisions governing spot blight abatement. Second, Shree Arihant argued that the City was not engaged in a governmental function when it burned Colonial Corner—noting that the second amended complaint alleged that blight abatement was merely a pretextual justification for the demolition.

4

Shree Arihant maintained that the City burned Colonial Corner to facilitate the redevelopment of the property.

The City did not present evidence to support the plea in bar, submitting the matter to the circuit court based solely on the allegations of the second amended complaint and the attached exhibits. The circuit court denied the City's plea in bar. When ruling from the bench at the conclusion of the pertinent hearing, the circuit court explained that it could not determine whether the City's actions "were solely or partially within its governmental function." Following the ruling, the City noted an interlocutory appeal pursuant to Code §§ 8.01-626 and 8.01-670.2.

## II. ANALYSIS

The City contends that the circuit court erred by denying the plea in bar. Focusing on the nature of the underlying conduct, the City maintains that it is immune from the majority of Shree Arihant's claims.

Code § 8.01-670.2 permits the interlocutory appeal of an order granting or denying a plea in bar asserting sovereign immunity. In pertinent part, the statute states:

> When, prior to the commencement of trial, the circuit court has entered in any pending civil action an order granting or denying a plea of sovereign, absolute, or qualified immunity that, if granted, would immunize the movant from compulsory participation in the proceeding, the order is eligible for immediate appellate review.

Code § 8.01-670.2(A).

We recognize that the City's plea in bar will not fully immunize it from compulsory participation in further proceedings. The City acknowledges that it is not immune from Shree

5

Arihant's takings claim.[1]  Nonetheless, we exercised our discretionary authority to grant the City's petition for an interlocutory appeal to address the City's contention that it is entitled to sovereign immunity from the other claims asserted by Shree Arihant.  When an aggrieved party files a petition for an interlocutory appeal, the Court "may take such action thereon as it considers appropriate under the circumstances of the case."  Code § 8.01-626.

"A plea in bar is a defensive pleading that reduces the litigation to a single issue, which, if proven, creates a bar to the plaintiff's right of recovery."  *Stevens v. Jurnigan*, 305 Va. ___, ___, 927 S.E.2d 799, 804 (2026) (quoting *Cooper Indus., Inc. v. Melendez*, 260 Va. 578, 594 (2000)).  "[W]here no evidence is taken in support of a plea in bar, the trial court, and the appellate court upon review, consider solely the pleadings in resolving the issue presented.  In doing so, the facts stated in the plaintiff's [complaint] are deemed true."  *Massenburg v. City of Petersburg*, 298 Va. 212, 216 (2019) (quoting *Lostrangio v. Laingford*, 261 Va. 495, 497 (2001)).  We have explained that this approach "results in functionally de novo review of the trial court's judgment."  *Id.*

In numerous cases, we have reiterated that the "doctrine of sovereign immunity is alive and well in Virginia."  *Niese v. City of Alexandria*, 264 Va. 230, 238 (2002) (quoting *Messina v. Burden*, 228 Va. 301, 307 (1984)).  "Virginia has long recognized that local governments share in the Commonwealth's sovereign immunity.  Unlike counties, which share fully in the sovereign's immunity from tort, whether a municipal corporation is entitled to sovereign

---

[1] We note that sovereign immunity does not apply to claims that are based on self-executing provisions of the Virginia Constitution, including the takings provisions set forth in Article I, Section 11.  *See School Bd. of Stafford Cnty. v. Sumner Falls Run, LLC*, 303 Va. 253, 256 (2024).

6

immunity protection depends on the type of function it exercises when liability arises." *Massenburg*, 298 Va. at 217-18 (citations omitted).

Sovereign immunity protects municipalities from claims arising from the performance of governmental functions. *Id.* at 218. "A function is governmental if it entails the exercise of an entity's political, discretionary, or legislative authority." *City of Chesapeake v. Cunningham*, 268 Va. 624, 634 (2004). "Governmental functions are powers and duties performed exclusively for the public welfare." *Id.* at 633. A governmental function is "directly tied to the health, safety, and welfare of [a municipality's] citizens." *Niese*, 264 Va. at 239 (quoting *Edwards v. City of Portsmouth*, 237 Va. 167, 171 (1989)).

In contrast, sovereign immunity does not protect municipalities from claims arising from the performance of proprietary functions. *Massenburg*, 298 Va. at 218. "If [a] function is a ministerial act and involves no discretion, it is proprietary." *Cunningham*, 268 Va. at 634. "Proprietary functions are performed primarily for the benefit of the municipality." *Id.* Sovereign immunity does not apply to claims arising from these functions, "even though 'the general public may derive a common benefit' from their performance." *Massenburg*, 298 Va. at 218 (quoting *Hoggard v. City of Richmond*, 172 Va. 145, 148 (1939)).

In the present case, the City did not comply with the statutory and municipal provisions governing spot blight abatement. The City Council was required to adopt a specific ordinance declaring Colonial Corner to be a blighted property. *See* Code § 36-49.1:1(C), (D); Hopewell City Code § 19-135 (1981). The City Council, however, never adopted such an ordinance. Moreover, the City Council never formally voted to demolish Colonial Corner. After the City Council voted to move forward with *planning* the controlled burn, its clerk erroneously recorded that the City Council had voted to burn the shopping center.

7

The City's immunity from the claims at issue, however, is not contingent upon the City's compliance with statutory and municipal provisions. We have consistently held that municipal sovereign immunity is contingent upon the nature of the actions underlying the claims at issue. *See, e.g.*, *Massenburg*, 298 Va. at 217-18 ("[W]hether a municipal corporation is entitled to sovereign immunity protection depends on the type of function it exercises when liability arises."); *Niese*, 264 Va. at 241 ("In this State, we have long determined the liability or non-liability of a city for acts committed by it according to whether the act was done in its governmental or proprietary character." (quoting *Burson v. City of Bristol*, 176 Va. 53, 63 (1940))). If a claim arises from the performance of a governmental function, a municipality is generally entitled to sovereign immunity from that claim—even when the municipality exercises its authority in a "'negligent or improper manner.'" *See Niese*, 264 Va. at 238 (quoting *Hoggard*, 172 Va. at 147).

When viewed together, the allegations of the second amended complaint and the attached exhibits[2] establish that the City was—at least partially—engaged in a governmental function when it burned Colonial Corner.

The second amended complaint and the attached exhibits plainly show that the City was attempting to abate blight when it demolished the shopping center. In the notices that the City sent to Shree Arihant (which were attached to the second amended complaint), the City expressly noted that Colonial Corner was a "blighted" property. The City also explained that Colonial Corner was "dilapidated," "deteriorated," "unsafe," "unfit for human occupancy," and a danger to the "public's health, safety, [and] welfare."

---

[2] An attached exhibit is considered part of a complaint. *See* Rule 1:4(i).

Blight abatement is a governmental function.  It involves the exercise of a municipality's discretionary authority and promotes the health, safety, and general welfare of a municipality's citizens.  When the City exercised its discretionary authority to demolish a blighted shopping center that posed a threat to public safety, it engaged in a governmental function that triggered the protection of municipal sovereign immunity.

We acknowledge that the allegations of the second amended complaint suggest that the City may have been motivated by the potential redevelopment of the Colonial Corner property when it demolished the shopping center.  The abatement of blighted property often promotes economic development, especially when the property at issue is zoned for commercial or industrial uses.  The City's pursuit of economic development opportunities, however, is irrelevant to the outcome of this case.[3]

At most, the second amended complaint establishes that the City burned Colonial Corner for dual purposes.  While the City may have considered the redevelopment of the Colonial Corner property when it decided to burn the shopping center, it also burned the shopping center to eliminate blight.  Therefore, the claims at issue in this case arise—at least in part—from the performance of a governmental function.  When governmental functions coincide with other functions, the "governmental function is the overriding factor and the doctrine of sovereign immunity will shield the locality from liability."  *Cunningham*, 268 Va. at 639 (quoting *City of Va. Beach v. Carmichael Dev. Co.*, 259 Va. 493, 499 (2000)).

As the second amended complaint established that the City was performing a governmental function when it burned Colonial Corner, the circuit court erred by denying the

---

[3] In this case, it is unnecessary to determine whether economic development, in itself, may constitute a governmental function.

City's plea in bar. The City has sovereign immunity from Shree Arihant's common law tort claims (i.e., intentional trespass and tortious interference with a business expectancy), Shree Arihant's statutory tort claims (i.e., business conspiracy and waste),[4] and the majority of Shree Arihant's requests for declaratory relief (i.e., the requests based on liability for certain costs and penalties imposed by the City).[5] Accordingly, we reverse the circuit court's judgment and remand this case for further proceedings addressing Shree Arihant's takings claim and any claims asserted by and against third parties.

III. CONCLUSION

For the reasons stated, we reverse the judgment of the circuit court and remand this case for further proceedings.

*Reversed and remanded.*

---

[4] The statutes underlying these claims (i.e., Code §§ 8.01-178.1, 8.01-178.2, 18.2-499, and 18.2-500) do not expressly waive municipal sovereign immunity. "A waiver of sovereign immunity will not be implied from general statutory language but must be explicitly and expressly stated in the statute." *Montalla, LLC v. Commonwealth*, 303 Va. 150, 165 (2024) (quoting *Alliance to Save the Mattaponi v. Commonwealth Dep't of Env't Quality*, 270 Va. 423, 455 (2005)).

[5] Although sovereign immunity does not apply to declaratory judgment actions that are based on self-executing constitutional provisions, *see, e.g., School Bd. of Stafford Cnty.*, 303 Va. at 256, sovereign immunity bars other declaratory judgment actions that arise from a municipality's performance of a governmental function, *see, e.g., id.* at 255; *Afzall v. Commonwealth*, 273 Va. 226, 231 (2007).